UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Vicki Lashawn Jackson,

              Plaintiff,        Case No. 17-cv-10514

v.                                   Judith E. Levy
                                     United States District Judge
Jordan Dottor and
City of Dearborn Heights,       Mag. Judge Anthony P. Patti

              Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [8] AND
DENYING PLAINTIFF'S CROSS-MOTION FOR
<u>SUMMARY JUDGMENT [14]</u>**

Plaintiff Vicki Lashawn Jackson brought this action, which arises out of a traffic stop that resulted in her arrest on January 14, 2015. The complaint includes a claim for excessive use of force and state law tort claims against the responding officer, Jordan Dottor ("Officer Dottor"), and his employer, City of Dearborn Heights (collectively "defendants"). The complaint revolves around the allegation that Officer Dottor unreasonably removed plaintiff from her car at with his gun drawn and injured her by handcuffing her wrists too tightly. Defendants filed this

motion for summary judgment on August 24, 2018, on all counts. (Dkt. 8.) Plaintiff responded late, filing an "answer to defendants' motion for summary judgment" and "cross-motion for summary judgment." (Dkt. 14.)

I. Background[1]

Dashcam footage caught the relevant portions of Officer Dottor's pursuit and traffic stop that forms the basis for this case. On January 14, 2015, at about 4:38 P.M., Officer Dottor turned right onto Ford Road, in Dearborn, Michigan, activated his overhead lights, and pursued plaintiff for speeding. (Dkt. 8-2 at 8; Dkt. 8-4 at 16:38:17–16:38:50.) He pulled behind plaintiff in the left turn lane at the intersection of Ford and Inkster Roads. Plaintiff turned left into the right-most lane of Inkster Road. (Dkt. 8-2 at 8; Dkt. 8-4 at 16:39:00.)

Despite being pursued by Officer Dottor, plaintiff continued to drive in the right lane without stopping for several minutes. At one point early in the pursuit, plaintiff decreased her speed, appearing to pull over, but increased speed again and drove onwards. (Dkt. 8-4 at 16:39:20–

---

[1] Because plaintiff did not provide a meaningful recitation of the facts of her case in response to defendants' summary judgment motion, the facts outlined below are taken from the record as developed by defendants.

2

16:39:30.) Plaintiff passed multiple roads and driveways where she could have pulled in safely as she continued on Inkster Road. (*Id.*) After pursuing plaintiff with his overhead lights for approximately one minute, Officer Dottor activated his siren. (*Id.* at 16:39:37.)

After two minutes of pursuit, Officer Dottor and plaintiff stopped at a red light. Officer Dottor stopped his patrol car, turned off his siren, and yelled at the plaintiff twice to "[g]et out of the car now." (*Id.* at 16:40:33.) Plaintiff did not immediately exit her vehicle. Officer Dottor then drew his weapon, approached the car, and directed plaintiff to turn off her vehicle. (*Id.* at 16:40:38.) He opened her car door, pulled her out of the vehicle, placed her under arrest, and proceeded to handcuff her. (*Id.* at 16:40:40–16:40:50.) Plaintiff, visibly upset, pleaded with Officer Dottor: "Are you serious?" "My son is on the bus," and "I wasn't running, I had no chance to pull over." (*Id.* at 16:40:52–16:41:20.)

During the traffic stop and the subsequent ride to the police station, plaintiff complained that the handcuffs caused her pain and discomfort. Plaintiff first complained of tight handcuffs three minutes after she was initially handcuffed, stating: "[t]hese cuffs are so . . . they're hurting my arm." (*Id.* at 16:44:39.) Officer Dottor immediately replied, "[o]kay, I'll

3

adjust them, one minute." Less than one minute later, Officer Dottor told plaintiff, "[o]kay, turn around and I'll [adjust] them," and he did so. (*Id.* at 16:45:22.) Five minutes later, plaintiff made another complaint that "[t]hese handcuffs are still too tight." (*Id.* at 16:50:45.) Officer Dottor replied, "[n]o, I can get my fingers through them . . . this one is barely even on you." (*Id.* at 16:50:56–16:51:10.) Plaintiff, however, maintained that the handcuffs were still too tight. (*Id.* at 16:51:03.) Officer Dottor asked plaintiff to rearrange the position of her hands, and after a moment, told her, "[t]here you go," presumably having adjusted the handcuffs a second time. (*Id.* at 16:51:10–16:51:14.) For a few moments after that, plaintiff complained that "[i]t's still too tight, "[o]uch," "[t]hey're still too tight," and "[g]et it off that bone." (*Id.* at 16:51:15–6:51:30.) Plaintiff, however, made no additional complaints about the tightness of the handcuffs for the final ten minutes of the drive to the police station.

Throughout the traffic stop and ride to the police station, most of the conversation revolved around plaintiff's concern for her son. Plaintiff told Officer Dottor multiple times that she had to pick up her ten-year-old son from his bus stop and asked Officer Dottor repeatedly to contact

4

her daughter. Officer Dottor contacted dispatch and requested that plaintiff's daughter be notified that her brother had to be picked up from his bus stop. (*Id*. at 16:43:47–16:44:50.) Dispatch later informed Officer Dottor that plaintiff's daughter was already at the bus stop when dispatch contacted her; Officer Dottor then conveyed this message to plaintiff. (*Id*. at 16:57:20.)

Officer Dottor and plaintiff arrived at the police station at 5:00 P.M. Plaintiff maintains that after she was booked, she continued to complain of discomfort and pain from the handcuffs. (Dkt. 8-2 at 10.) She alleges that she requested to see a sergeant, who ordered that the handcuffs be removed. (*Id*.) Plaintiff spent the night in the jail and was released the next morning. (*Id*. at 11).

An attorney, Odie T. Uddyback, III, visited plaintiff at the police station. He recalled plaintiff's wrists being bruised and swollen and recalled taking cell phone photos of plaintiff's wrists. (Dkt. 14-3 at 3.) But he states now that he has switched phones multiple times since the incident and no longer has the photos. (*Id*.)

At some point following the arrest, plaintiff saw her doctor, an internal medicine physician, about possible wrist injuries from the

5

handcuffing. (Dkt. 8-2 at 13). Plaintiff, however, could not recall the doctor providing any diagnosis, treatment, or medication, nor does she allege or provide medical records to substantiate her alleged wrist injuries. (*Id.*) Plaintiff also contends that the traffic stop caused her to suffer heightened anxiety, prompting an increased dose of her anti-anxiety medication. (*Id.*)

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

The moving party "bear[s] the initial burden of demonstrating the absence of a genuine issue of material fact on at least one essential

element." *Stiles v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets this burden, the non-moving party must then point to "facts in the record raising a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324).

## III. Plaintiff's "Cross-Motion for Summary Judgment"

On October 29, 2018, plaintiff filed her response to defendants' motion for summary judgment and entitled it, in part, a "cross-motion for summary judgment." But the dispositive motion cut-off in this case was August 27, 2018. (Dkt. 7.) Although the Court entered a stipulated order extending the time for plaintiff's counsel to file a memorandum in response to defendants' timely motion for summary judgment (Dkt. 13), the order does not provide an extension to the dispositive motion cutoff.[2] Therefore, the Court will not consider plaintiff's cross-motion, as it is

---

[2] The stipulated order was, in fact, the second stipulation permitting an extension to file a response to defendants' motion for summary judgment. (*See* Dkts. 11, 13.) Plaintiff had filed a two-page "answer and cross-motion" on the final day permitted under the first stipulated extension. (Dkt. 12.) Plaintiff's first filing was grossly deficient, prompting the need for the second stipulation for an extension to file the current amended response.

untimely. And, in any event, the motion is facially deficient. The motion is denied.

## IV. Defendants' Motion for Summary Judgment

Plaintiff brings counts of excessive force, gross negligence, intentional infliction of emotion distress, and assault and battery against Officer Dottor. And although not clearly delineated on the face of the complaint, it appears the only count that is pleaded against the City of Dearborn Heights is count one, broadly entitled "Violations of the Fourth and Fourteenth Amendments." (Dkt. 1) Defendants move for summary judgment on all counts.

### a. Count One

Plaintiff brings count one pursuant to 42 U.S.C. § 1983, asserting a claim of excessive force in violation of the Fourth Amendment of the U.S. Constitution. Specifically, she alleges that Officer Dottor handcuffed her too tightly, amounting to excessive force. She appears to bring a municipal liability claim against the City of Dearborn Heights under this count, as well.

### i. Officer Dottor

Plaintiff argues that Officer Dottor used excessive force and is not entitled to qualified immunity related to his placement of the handcuffs of her wrists. "In civil suits pursuant to 42 U.S.C. § 1983 for money damages, qualified immunity protects a public official from being sued as long as the official 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crockett v. Cumberland*, 316 F.3d 571, 579 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). On summary judgment, the Court considers whether the facts "viewed in the light most favorable to the plaintiff, 'show the officer's conduct violated a constitutional right.'" *Soloman v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Only if there is sufficient showing of a constitutional violation must a court analyze whether the right is "clearly established." *Id*.

The Fourth Amendment guarantees citizens the right "to be free of excessive force when police make an arrest or seizure." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). The right to be free from excessive force includes a prohibition of "unduly tight or excessively

9

forceful handcuffing." *Miller v. Sanilac Cty*, 606 F.3d 240, 252 (6th Cir. 2010) (citing *Morrison v. Bd. of Tr. of Green Twp*, 583 F.3d 394, 400 (6th Cir. 2009)). To determine whether handcuffing is excessively forceful, courts employ a three-pronged test. *Lyons,* 417 F.3d at 576. To avoid summary judgment on her handcuffing claim, plaintiff "must offer sufficient evidence to create a genuine issue of material fact that: (1) [ ] she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Miller*, 606 F.3d at 252 (quoting *Morrison*, 583 F.3d at 400). In this case, only prongs two and three are at issue since it is undisputed that plaintiff complained that the handcuffs were too tight.

In general, to meet the second prong, the officer must have dismissed or disregarded plaintiff's complaints. *See Baynes v. Cleland*, 799 F.3d 600, 609 (6th Cir. 2015). A "dismissive response" may be sufficient to meet this prong, and thus, "a plaintiff can survive summary judgment even if the officer gave some reply . . . if the response was essentially nonresponsive." *Id.* (citing *Morrison*, 583 F.3d at 402). For instance, in *Baynes*, the plaintiff survived summary judgment where the

plaintiff "testified that [the officer] replied to [plaintiff's] complaints by telling [plaintiff] that the handcuffs were not to tight, and if they were loosened, [plaintiff] may be able to get out." *Id.* This response was, in effect, nonresponsive since it simply dismissed the plaintiff's complaints without acting on them.

Plaintiff fails to show that Officer Dottor ignored her complaints. In contrast to *Baynes*, the Dashcam audio recorded multiple responses by Officer Dottor almost immediately after plaintiff's initial complaints. When plaintiff first complains a few minutes into her arrest, Officer Dottor immediately responded, "I'll adjust them for you." And he does so within one minute. About five minutes later, plaintiff again tells Officer Dottor that the handcuffs are too tight. He again responded immediately, stating, "I can get my fingers in here" and "this one's barely even on you," demonstrating that he checked the handcuffs within moments of her second complaint. He then helped her adjust her hands, stating "there you go." After two adjustments, plaintiff again claims the handcuffs are too tight. But for the final ten minutes of transport to the police station, plaintiff makes no further complaints. By responding to plaintiff and

11

adjusting the handcuffs and plaintiff's hand position, Officer Dottor was demonstrably responsive.

Plaintiff repeatedly argues that Officer Dottor ignored her requests and she contends that Officer Dottor failed to loosen her handcuffs at any point. This is refuted by the dashcam footage. And although Officer Dottor did not respond to her final complaint, an officer is not required to respond to every request to loosen handcuffs. Rather, the law requires that an officer not *ignore* an arrestee's complaints. *See Miller*, 606 F.3d at 252. Officer Dottor's swift response to the initial two complaints, even if plaintiff believes his responses were inadequate, sufficiently demonstrates that he did not ignore plaintiff's complaints. Because the second prong is not met, Officer Dottor is entitled to summary judgment on this claim.

Regarding the final prong, that plaintiff was physically injured, the Sixth Circuit instructs that most injuries are sufficient, including swelling, redness, numbness, and injuries requiring further medical attention. *E.g.*, *Baynes*, 799 F.3d at 609 (finding deposition testimony about numbness and medical records noting a diagnosis of "bilateral radial sensory neuropathy" as a result of the handcuffing was sufficient).

Although deposition testimony may support the existence of an issue of fact on this element, a failure by plaintiff to support her testimony with medical or other records can weigh in favor of summary judgment for defendants. *Miller*, 606 F.3d at 252 ("[A]lthough [plaintiff] stated in his deposition that he lost color in his hands for more than a day after the arrest and has continuing inability to use his hands, these assertions are not supported by his medical records or the intake form he completed during his arrest.").

The Court need not reach a decision on this prong but nonetheless notes that plaintiff struggles to substantiate an issue of fact on this element, as well. Plaintiff's deposition testimony does not reveal any physical injury. And although she stated she went to a physician following the incident, she also stated she was unable to recall whether it resulted in a diagnosis or needed treatment. She also provides no medical records in response to defendants' motion to support her claim. The only showing she has made is to provide her own affidavit that states her "wrist was bruised and swollen" (Dkt. 143-2), and an affidavit from an attorney who visited her at the police station, who stated he took pictures of her wrists that "were so bruised to the point that they look as

13

if they were bleeding" (Dkt. 143-3). And since the only potential photographic evidence of her bruised wrists has since been lost, no photos, medical documentation, or deposition testimony is provided to the Court to support an issue of triable fact on plaintiff's injuries. Although most physical injuries will qualify, failing to support assertions of an injury with deposition testimony, medical records, or otherwise can suggest a plaintiff has not met her burden on this prong. *See Miller*, 606 F.3d at 252. Nonetheless, the Court declines to decide this issue.

Because there is no issue of fact as whether Officer Dottor responded to plaintiff's complaints about the handcuffs, her right to be free from excessively forceful handcuffing was not violated.[3] Officer Dottor is entitled to summary judgment on this claim.

  ii. *City of Dearborn Heights*

In her response to defendants' motion, plaintiff briefly argues that the City violated her constitutional rights through "active concealment of abusive police actions." (Dkt. 14 at 22–23.) "To show the existence of a

---

[3] Since there was no constitutional violation, the Court need not analyze whether the right is clearly established, but notes that the right at issue is likely is. *See Baynes*, 799 F.3d at 613 ("[U]nduly tight or excessively forceful handcuffing is a clearly established violation of the Fourth Amendment." (citing cases)).

14

municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Winkler v. Madison Cty.*, 893 F.3d 877, 901 (6th Cir. 2018) (quoting *Baynes*, 799 F.3d at 621). But in her response, plaintiff rests on bald assertions. She has not pointed to any evidence in the record that creates a triable fact as to an official policy, action by policy makers, lack of training, or a custom adopted by Dearborn Heights. Accordingly, the City is entitled to summary judgment on this claim.

### b. Gross Negligence

Plaintiff brings a count of gross negligence against Officer Dottor. "Under the governmental immunity act, a governmental employee is not liable in tort for personal injuries as long as the employee's 'conduct does not amount to gross negligence that is the proximate cause of the injury or damage.'" *Oliver v. Smith*, 269 Mich. App. 560, 565 (2006) (quoting MCL § 691.1407(2)). But the governmental immunity act does not *create* a cause of action. *Rakowski v. Sarb*, 269 Mich. App. 619, 627 (2006) (citing

15

*Beaudrie v. Heanderson*, 465 Mich. 124, 139 (2001)). A plaintiff must first allege "that the governmental employee defendant owed a common-law duty to the plaintiff." *Id.* But because Michigan courts are not "bound by the choice of label" used in a pleading, *Norris v. Police Officers*, 292 Mich. App. 574, 582 (2011), the Court will generously construe this claim to be a claim of negligence arising out of Officer Dottor's handcuffing.[4]

Under the statute, a lower level government defendant's actions taken within the scope of his employment is immune from suit, unless it amounts to gross negligence. MCL 691.1407(2). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). A court must determine whether an officer's "conduct and failure to act demonstrates

---

[4] This Count is likely deficient. The Michigan Court of Appeals has stated that a "claim of gross negligence [that] is fully premised on [a] claim of excessive force" is not a separate cognizable claim. *VanVorous v. Burmeister*, 262 Mich. App. 467, 483 (2004). And, in fact, plaintiff's gross negligence count is pleaded as a constitutional violation, referencing "excessive, unnecessary and unwarranted brutality" in violation of "Plaintiff's constitutional rights as protected under the 4th and 14th Amendment to the United States Constitution." (Dkt. 1 at 14.) The actions alleged in this count are also the same ones that serve as the basis for counts of intentional infliction of emotional distress and assault and battery, both intentional torts. *See VanVorous*, 262 Mich. App. at 483–84 ("[T]his Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence."). But because the Michigan Court of Appeals has also cited to handcuffing-related excessive force cases in the context of gross negligence, the Court will entertain this count on the merits.

a willful disregard of precautions and measures to attend to plaintiff's safety," or otherwise stated, whether "an objective observer watching [the officer's] conduct could reasonably conclude that he simply did not care about plaintiff's safety or welfare." *Jackson v. Lubelan*, No. 338275, 2018 Mich. App. LEXIS 2789, at *8–9 (July 5, 2018) (citing *Oliver v. Smith*, 290 Mich. App. 678, 685 (2010); *Tarlea v. Crabtree*, 263 Mich. App. 80, 90 (2004)). In the context of handcuffing, the Michigan Court of Appeals has adopted the Sixth Circuit's reasoning that "a police officer's conduct of handcuffing an individual too tightly does not constitute gross negligence unless physical injury results." *Oliver*, 269 Mich. App. at 566.

Officer Dottor is clearly a lower level employee taking actions within the scope of his employment, and since his conduct was not grossly negligent, he is immune from suit on this claim. The dashcam footage demonstrates that Office Dottor was responsive to plaintiff's complaints about the tightness of the handcuffs. On two occasions, he quickly responded to plaintiff's requests to adjust them. Therefore, a reasonable observer could not conclude that Officer Dottor "simply did not care about plaintiff's safety or welfare." *See Jackson*, 2018 Mich. App. LEXIS 2789,

at *8–9. Accordingly, Officer Dottor is entitled to summary judgment on plaintiff's claim of gross negligence.

### c. Intentional Torts

Finally, plaintiff brings claims of intentional infliction of emotional distress and assault and battery, which are intentional torts. With respect to intentional tort claims brought against government defendants, the Michigan Supreme Court directs courts to do the following:

> If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity . . . by showing the following:
>
> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cty.*, 482 Mich. 459, 480 (2008). Malice has been described as "willful misconduct," "conduct . . . that was intended to harm the plaintiff," or "wanton misconduct . . . show[ing] such indifference to whether harm will result." *Id.* at 475. It is undisputed that the act of

18

handcuffing plaintiff was discretionary and taken during the course of Officer Dottor's employment, and therefore the only issue is whether there is a material issue of fact as to whether Officer Dottor acted with malice or in bad faith.

Here, the dashcam footage demonstrates that Officer Dottor responded to plaintiff's complaints and his actions, therefore, do not constitute wanton or willful misconduct. Officer Dottor adjusted the handcuffs after plaintiff complained of discomfort multiple times. There is nothing in the record to suggest that Officer Dottor "intended to harm" plaintiff or was willfully indifferent to whether plaintiff would be injured as a result of his actions. Nor does the dashcam footage or his deposition testimony, suggest that Officer Dottor's actions were taken in bad faith.

In her response, plaintiff relies on conclusory statements to refute defendants' properly supported motion for summary judgment. She states that Officer Dottor's "violent" approach to her vehicle with his weapon drawn and pulling her from the vehicle is "clearly an assault." (Dkt. 14 at 22.) But plaintiff fails to point to the record or provide additional evidence to support this conclusion. Nor does she provide legal support for her claim that Officer Dottor's decision to approach the car

19

with his weapon drawn was unlawful or excessive. Accordingly, there is no issue of material fact as to malice, and Officer Dottor is entitled to immunity for the intentional torts brought against him.

## V. Conclusion

For reasons stated above, defendants' motion for summary judgment is **GRANTED** (Dkt. 8); and

Plaintiff's improper cross-motion for summary judgment is **DENIED** (Dkt. 14).

IT IS SO ORDERED.

Dated: March 19, 2019      s/ Judith E. Levy
    Ann Arbor, Michigan      JUDITH E. LEVY
                                United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2019.

                                     s/Shawna Burns
                                     SHAWNA BURNS
                                     Case Manager